IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| PEARLSHIRE CAPITAL GROUP LLC, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v ) | No. 19-cv-07095 |
| ) | |
| RANA REHAN ZAID ) | Plaintiff Demands a |
| ) | Trial by Jury |
| DEFENDANTS. ) | |

## COMPLAINT AT LAW

NOW COMES Plaintiff, PEARLSHIRE CAPITAL GROUP, LLC (hereinafter referred to as "Plaintiff" or "Pearlshire"), by and through its attorneys, Plunkett Cooney, PC, and for its Complaint against Defendant, RANA REHAN ZAID ("Rehan") states as follows:

### The Parties

1. Pearlshire is a manager managed Illinois Limited Liability Company organized in 2013 which at all relevant times has been in good standing having its principal place of business in the City of Schaumburg, County of Cook, and State of Illinois.

2. Pearlshire's sole Member and Manager since its organization has been Farrukh Bagasrawala ("Bagasrawala"), who is, and was at all relevant times, a citizen of, and domiciled in, the State of Illinois.

3. Defendant Rehan is not a United States Citizen but a native and citizen of Pakistan and is in this country on a work visa. He currently resides, and at all relevant times resided, in the State of Illinois.

4. RRZ is an Illinois limited liability company that at all relevant times was solely owned and managed by Rehan.

1

5. Rehan has not been granted status of a permanent resident by the United States.

### The Jurisdiction and Venue

6. There is complete diversity of citizenship between the Plaintiff and Defendants and specifically between the sole Member of the Plaintiff and Defendant Rehan.

7. Further, as averred in details below, the matter in controversy between the parties substantially exceeds $75,000.00, exclusive of interest and costs.

8. By virtue of the foregoing facts, this court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332 (a)(2)

9. All Defendants' activities complained of occurred in this jurisdictional district, which makes venue proper in this judicial district pursuant to 28 U.S.C. §1391 (b)(1) & (2).

### Nature of the Action

10. While employed by Plaintiff in a fiduciary capacity Rehan usurped at least three (3) of Plaintiff's business opportunities resulting in millions of dollars of losses to Plaintiff and ill-gotten gains to Rehan.

### Background Facts

11. Bagasrawala formed Pearlshire in September of 2013.

12. Bagasrawala is and always has been the sole member and manager of Pearlshire.

13. Since 2013 Pearlshire, has been active in evaluating investments in the hospitality industry and has acted somewhat as a holding company through which investments are evaluated and negotiated through Pearlshire, but closed in the names of Special Purpose Entities ("SPEs") Pearlshire organizes. After acquisition of the hotels or developments, net profits from the SPEs owning those investments are distributed to Pearlshire for distribution to investors.

14. In 2013, before Rehan was hired as a Pearlshire employee, Pearlshire successfully

negotiated the purchases of hotels in Itasca, Roselle and Countryside, Illinois and closed those purchases in the names of SPEs whose majority control was held by Bagasra Real Estate LLC ("BRE"), an SPE solely owned by Bagasrawala. These three hotels were managed by Pearlshire. BRE generally held an 85% interest in these SPEs.

15. Specifically, Pearlshire caused the following SPEs to be formed to acquire and hold title to the first three hotels acquired: Pearl Hospitality, LLC ("PH"), for the Itasca hotel; Pearl Hospitality Roselle, LLC ("PHR") for the Roselle hotel; and Pearlshire Countryside Hotel, LLC (PCH"), for the Countryside hotel. Pearlshire additionally organized a separate SPE for a restaurant and banquet facility acquired with and adjacent to the Countryside hotel.

16. Rehan, as a recent college graduate, was not an owner of any part of Pearlshire, and didn't possess any funds to invest in the three hotels that Pearlshire acquired and/or developed.

17. In August 2014 pursuant to 20 CFR Sec 655.734 Pearlshire filed a Labor Condition Application, including the attached Exhibit B, that allowed it to hire Rehan effective October 1, 2014 and permitted Rehan to work as an employee of Pearlshire in financial analysis, which employment allowed Rehan to remain in the United States.

18. Rather, Rehan's role with respect to the hotels acquired by Pearlshire was to perform the day-to-day work necessary to acquire the hotels. Rehan was tasked with performing the "leg work" with respect to these investments such as due diligence, analysis of the investment opportunities, and creating marketing and informational materials to be used in bids.

19. Rehan was employed full time through the Labor Condition Application with Pearlshire from October of 2014 through March of 2016 during which time he was paid an annual salary of $51,000 plus health insurance benefits by Pearlshire. Additionally, Pearlshire

paid the lease payments for Rehan's car.

20. Rehan's duties and responsibilities as a full time employee with Pearlshire included financial analysis of the hotels and other investments controlled by BRE and held in the names of SPEs and analyzing other possible investment opportunities for Pearlshire, particularly in the hospitality industry.

21. During his employment Rehan assisted Pearlshire in financial analysis and other due diligence related activities for multiple hotel investment opportunities Pearlshire was evaluating.

22. During his employment with Pearlshire Rehan was provided with access to nonpublic personal information related to Pearlshire and Bagasrawala, including personal financial statements, balance sheets, income statements, income tax returns, hospitality industry contacts, banking industry contacts, portfolio summaries, and the like (the "Proprietary Information").

23 Rehan's access to nonpublic personal information of Plaintiff and its principal was allowed so Rehan could further Pearlshire's interests in providing such information to potential counterparties to hospitality investment opportunities for furtherance of Pearlshire's business pursuits.

24. In November 2014, the month after he was hired as a Pearlshire employee, Rehan entered into an agreement with others to jointly pursue hotel investment opportunities and to exclude Pearlshire from such opportunities.

25. Rehan while an employee of Pearlshire, with others, used Pearlshire's Proprietary Information to acquire, directly or indirectly, ownership interests in at least three hotel opportunities in Des Plaines, Illinois, Valparaiso, Indiana and Burr Ridge, Illinois as described

*infra*, and excluded Pearlshire from those opportunities.

26. Rather than taking an ownership interest in these three hotels in the name of his employer, Pearlshire, or in an entity established by Pearlshire's sole member, Bagasrawala, Rehan took ownership, in part, in various separate entities owned by Rehan and others.

## The Des Plaines Opportunity

27. In late 2014 Pearlshire learned of a development opportunity in the City of Des Plaines ("Des Plaines Opportunity") that involved potentially lucrative tax increment financing ("TIF") funds for the developer awarded the proposal (the "Des Plaines Development").

28. Upon learning of the Des Plaines Development Pearlshire tasked Rehan with coordinating its due diligence, project management and preparation of a development proposal to be submitted to the City of Des Plaines.

29. Pearlshire spent more than $100,000 for consultants, studies, reports, supplements, attorneys' fees and renderings for the $28 million Des Plaines Development to be situated on a 4.5 acre parcel of property at the crossroads of Mannheim and Higgins Roads (the "Des Plaines Property").

30. Rehan prepared and submitted a proposal to Des Plaines on behalf of Pearlshire on April 13, 2015 for the Des Plaines Development.

31. The proposal Rehan submitted to Des Plaines for Pearlshire included significant amounts of the Proprietary Information without which Des Plaines would not have approved Pearlshire's proposal.

32. Rehan appeared at numerous meetings and engaged in dozens of discussions with Des Plaines officials during 2015 on Pearlshire's behalf explaining Pearlshire's background and its development proposal for the Des Plaines Development.

33. In 2015 Des Plaines awarded the Des Plaines Development to Pearlshire based on the proposal Rehan submitted April 13, 2015 on Pearlshire's behalf, including Pearlshire's and Bagasrawala's finances, experience and history with prior hotel acquisition or development projects.

34. In conjunction with the Pearlshire proposal Rehan submitted to Des Plaines, Rehan also submitted letters of reference from a municipality, a banker and a hotel franchisor affirming Pearlshire's status as a *bona fide* developer capable of completing the Des Plaines Development in accordance with the proposal submitted April 13, 2015.

35. Unbeknownst to Bagasrawala the proposal Rehan submitted to Des Plaines on Pearlshire's behalf April 13, 2015 also included substantial misstatements about Pearlshire's asserted affiliation with another entity described in that proposal and the involvement of an entity Rehan organized and controlled (Prominence Hospitality LLC) as somehow being involved in Pearlshire's proposal.

36. Without any disclosure whatsoever to Pearlshire, after Des Plaines awarded the Des Plaines Development to Pearlshire based on the April 13, 2015 proposal, Rehan organized O'Hare Real Estate LLC, an Illinois limited liability company. The City of Des Plaines prepared a summary of terms for the Pearlshire proposal in Pearlshire's name but thereafter Rehan requested that the term sheet be amended in the name of O'Hare Real Estate LLC instead of Pearlshire, and convinced Des Plaines it was an SPE organized by Pearlshire to take title to the Des Plaines Property.

37. Without any disclosure whatsoever to Pearlshire after Des Plaines awarded the Des Plaines project to Pearlshire, Rehan negotiated to purchase an additional 2.5 acres of property contiguous to the Des Plaines Property (the "Orchards Property") for his own benefit

from the City of Des Plaines, which at all times thought it was dealing with an SPE organized by and for the benefit of Pearlshire.

38. The Orchards Property was ultimately included in the Des Plaines Development and was closed in the name of a separate LLC Rehan owned and controlled, Orchards Lot 6 LLC.

39. Rehan proceeded to close acquisition of the Des Plaines Property in the name of O'Hare Real Estate LLC and Orchards Lot 6 LLC, both of which are 50% owned by RRZ, LLC, an Illinois limited liability company solely owned by Defendant.

40. Pursuant to a Redevelopment Incentive Agreement signed in 2015 between Des Plaines and O'Hare Real Estate LLC the latter, 'as developer of the Des Plaines Development' will earn Tax Increment Financing ("TIF") incentives of $7.5 Million plus whatever revenues can be derived from affiliates owning, leasing or managing some or all of the subdivided parcels in the Des Plaines Development, including a restaurant, gas station, convenience store, hotel and car wash.

41. In addition, with respect to the Des Plaines Development, Rehan organized Prominence O'Hare LLC, an SPE organized to construct and own a hotel, and RRZ holds a 30% membership interest in Prominence O'Hare LLC.

42. On information and belief Prominence O'Hare LLC is franchisee to that certain franchise agreement allowing it to operate the hotel to be constructed in the Des Plaines Development as a Holiday Inn Express.

43. Despite Rehan's employment with Pearlshire where his duties included searching for and analyzing potential investment opportunities in the hospitality industry, and despite that Pearlshire's bid was accepted by Des Plaines, Rehan did not include Pearlshire or its sole

7

member, Bagasrawala, as an owner of any of the SPEs that now own the various business opportunities of the Des Plaines Development.

44. Defendant Rehan, by virtue of RRZ's 50% interest in O'Hare Real Estate LLC, the Des Plaines Development Developer, will personally profit as a result of the Pearlshire development proposal submitted April 13, 2015 for the Des Plaines Development.

45. Defendant Rehan, by virtue of RRZ's 30% interest in Prominence O'Hare LLC, the Des Plaines Development hotel owner and operator, will personally profit as a result of the Pearlshire development proposal submitted April 13, 2015 for the Des Plaines Development.

46. On or about November 18, 2015 Rehan, while working full time for Pearlshire, submitted three simultaneous applications to become a franchisee to Holiday Inn's franchise manager Holiday Hospitality Franchising LLC, as follows:

    a. For a hotel Pearlshire acquired at 318 West College Drive, in Appleton, Wisconsin, submitted by Rehan on Pearlshire's behalf as its purported "Managing Principal."

    b. For a hotel Pearlshire acquired at 300 Mall Drive in Appleton, Wisconsin, submitted by Rehan on behalf of Pearlshire Appleton LLC, an SPE Pearlshire organized as manager of that hotel; and

    c. For a hotel to be constructed at the Des Plaines Development, submitted by Rehan on behalf of "Prominence Hospitality Group LLC/O'Hare Real Estate, LLC" as its managing principal.

47. Each of Rehan's simultaneously submitted applications to become a Holiday Inn franchisee in November 2015 was transmitted by Rehan from his Pearlshire email address.

48. On information and belief Pearlshire's Proprietary Information, including Bagasrawala's personal financial statements as a "partner" was submitted by Rehan to Holiday

8

Hospitality Franchising LLC in conjunction with the 3 applications simultaneously submitted by Rehan to acquire 3 franchises.

49. Rehan's simultaneous submission of three Holiday Inn franchise applications was intended to confuse Holiday Inn about the Des Plaines application being sourced to and affiliated with Pearlshire and the Des Plaines franchise being backed by Pearlshire's financial strength and industry experience.

50. After submission of the Des Plaines Holiday Inn franchise application Rehan requested Shawn Siemers, Director of Holiday Inn's franchise development to keep O'Hare Real Estate LLC's control of the Des Plaines Development confidential in order to prevent Bagasrawala and Pearlshire from learning of Rehan's subterfuge.

51. With respect to the Holiday Inn franchise application he submitted for the Des Plaines Development, Rehan identified his experience owning or managing Pearlshire's Itasca and Countryside hotels and enclosed his resume proclaiming he co-founded and is Director and Principal of Pearlshire.

52. Pearlshire has sued Rehan for his usurpation of the Des Plaines corporate opportunity and that claim remains pending in this Court as Case No. 18 cv 04787 (the "2018 Case"). On May 24, 2019 Pearlshire filed its Motion for Leave to File a Third Amended Complaint in the 2018 Case (Doc. No. 45) seeking to add the usurped Valparaiso and Burr Ridge hotel opportunities and RRZ as a Defendant to the 2018 Case, which motion is fully briefed and awaiting decision. Pearlshire brings this action to prevent Defendant from arguing that the applicable statute of limitations for claims arising from the Valparaiso and Burr Ridge opportunities has expired in the event the Court in the 2018 Case does not issue a decision on Pearlshire's Motion for Leave to File a Third Amended Complaint.

## The Valparaiso Hotel Opportunity

53. During 2014 Rehan became aware of a Fairfield Inn hotel in Valparaiso that was going to be available for prospective purchase while working for Pearlshire ("Valparaiso Opportunity")

54. Rehan's knowledge of the possible Valparaiso Opportunity came through broker Nate Sahn and others with CBRE.

55. Bagasrawala had communicated with Nate Sahn of CBRE about possible hotel acquisitions for two years before the Valparaiso Opportunity first became available.

56. Pearlshire had previously submitted offers to purchase hotels through Nate Sahn and CBRE before the Valparaiso Opportunity became available.

57. On November 21, 2014 Rehan signed and sent Nate Sahn of CBRE a Letter of Intent ("LOI") on Pearlshire's letterhead to purchase the Valparaiso Fairfield Inn for $2.2 Million. Rehan submitted that LOI from his Pearlshire email address but did not copy Bagasrawala on the LOI or email transmitting it.

58. On December 4, 2014 Rehan signed and submitted a revised LOI through Nate Sahn at CBRE for Pearlshire's purchase of the Valparaiso Fairfield Inn increasing the purchase price by $200,000. Rehan transmitted the revised LOI using his Pearlshire email address but did not copy Bagasrawala on it or his email transmitting it.

59. On December 5, 2014 yet a third letter of intent was submitted by Rehan through Nate Sahn at CBRE for Pearlshire's purchase of the Valparaiso Fairfield Inn. The December 5, 2014 LOI was executed on Pearlshire's behalf by a third party who was neither a member or authorized agent of Pearlshire.

60. Rehan never informed Bagasrawala or Pearlshire of the Valparaiso Opportunity,

even though that opportunity was one Pearlshire would readily, willingly and ably pursue.

61. Neither Rehan nor said third party was ever authorized to submit letters of intent for any undisclosed opportunity for their own benefit by Pearlshire's.

62. In 2015 Rehan and said third party closed on their acquisition of the Valparaiso Fairfield Inn through an SPE named BSD Hospitality LLC, an Indiana Limited Liability Company.

63. Rehan owns 42.5% of the equity in BSD Hospitality LLC and will personally profit from Valparaiso Opportunity.

64. Despite Rehan's employment with Pearlshire where his explicit duties included searching for and analyzing potential investment opportunities in the hospitality industry, and despite that the opportunity was pursued using Pearlshire's name, Rehan did not include Pearlshire or its sole member, Bagasrawala, as an owner of any of the SPEs that own the Valparaiso Opportunity.

**The Burr Ridge Opportunity**

65. In mid-2015 Rehan was advised by CBRE while working for Pearlshire of an opportunity to acquire a parcel of land in the Estancia Executive Center that might be suitable for construction of a hotel (together with that certain adjacent vacant land the "Burr Ridge Opportunity")

66. Rehan never disclosed the Burr Ridge Opportunity to Pearlshire.

67. Instead, in August 2015 Rehan directed CBRE to submit a letter of intent on Pearlshire's behalf to purchase 2.2 acres of land in Burr Ridge for construction of a hotel.

67. The owner of the Burr Ridge property accepted Rehan's LOI on Pearlshire's behalf and also granted Pearlshire an option to purchase an adjacent parcel for possible

11

development of a banquet facility adjacent to the hotel parcel.

69. In 2015 Rehan entered into an engineering contract with V3 Engineering ("V3") in Pearlshire's name and on Pearlshire's behalf for the Burr Ridge Opportunity.

70. In 2015 Rehan caused a redevelopment proposal to be submitted to Burr Ridge's Plan Commission in Pearlshire's name and on Pearlshire's behalf using the Development Plan V3 prepared identifying Pearlshire as Developer.

71. Rehan never informed Pearlshire of the Burr Ridge Opportunity.

72. Rehan closed on the acquisition of the Burr Ridge hotel and exercised his option to acquire the adjacent property then sold the adjacent property to a banquet facility developer for a profit.

73. On information and belief Rehan submitted a franchise application for a Hampton Inn hotel to be built on the Burr Ridge hotel parcel on Pearlshire's behalf.

74. Burr Ridge approved the Development Plan submitted by Rehan on Pearlshire's behalf and permitted construction of a four story Hampton Inn on that property.

75. On information and belief Rehan owns, directly or indirectly, 40% of the Burr Ridge Opportunity equity.

76. Despite Rehan's employment with Pearlshire where his explicit duties included searching for and analyzing potential investment opportunities in the hospitality industry, and despite that the opportunity was pursued using Pearlshire's name, Rehan did not disclose the Burr Ridge Opportunity to Pearlshire or include Pearlshire or its sole member Bagasrawala as owners of any of the SPEs that owns the Burr Ridge Opportunity.

77. Rehan will profit as a result of his acquiring the Burr Ridge hotel opportunity.

78. The Burr Ridge hotel opportunity is an opportunity Pearlshire would have readily,

willingly and ably pursued had Rehan advised Pearlshire of the opportunity.

## Count I – Fraud and Deceit

79. Plaintiff hereby incorporates all allegations of Paragraphs 1 through 78 above as though fully set forth herein as paragraph 69.

80. Rehan used and employed deception, fraud, false pretenses, false promises, misrepresentations and concealment, and suppressed or omitted material facts during the time he was entrusted with managing Pearlshire's business interests.

81. Despite a duty of fidelity and trust as an employee owed by Rehan under Illinois law, Rehan breached his duties to Pearlshire by engaging in the following actions:

    a. Actively exploiting his position within Pearlshire for his own personal benefit and concealing this exploitation,

    b. Exploiting his position with Pearlshire to acquire the Valparaiso Opportunity absent any disclosure and while concealing his actions from Pearlshire.

    c. Exploiting his position with Pearlshire to acquire information about the Burr Ridge Opportunity and acquiring that opportunity for his own personal benefit absent any disclosure and while concealing his actions from Pearlshire.

    d. Failing to inform Pearlshire that he participated in and formed rival companies and simultaneously took management positions with said companies while employed by Pearlshire and concealed such actions

    e. Used Pearlshire's and Farrukh's confidential business or financial information for Rehan's new business before or after his departure and concealed such actions.

    f. Willfully entered into letters of intent, development agreements, franchise agreements and vendor agreements on Pearlshire's behalf without ever informing Pearlshire's sole member and manager Bagasrawala of those actions and lacking any authority to do so.

    g. Actively traded on Pearlshire's name, reputation, experience and financial

13

status for his own individual benefit while misrepresenting he co-founded and served as Pearlshire's "managing principal."

82. Rehan concealed the creation and his involvement with the Valparaiso and Burr Ridge and other SPEs which kept Pearlshire from ascertaining the damaging course of his conduct, and Pearlshire did not discover, and could not have reasonably discovered Rehan's usurpation of the Pearlshire corporate opportunities in Valparaiso and Burr Ridge until 2018 during discovery in the 2018 Case.

83. As a direct and proximate result of Rehan's deception and concealment of material facts, Plaintiff has been misled, deceived, and damaged.

84. During the periods Pearlshire entrusted Rehan with management duties on behalf of Pearlshire, he breached said trust by directly or indirectly benefitting himself and other third parties and relatives including but not limited to the SPEs he formed to capitalize on the Valparaiso and Burr Ridge opportunities.

85. Rehan's deception occurred at a time when the duties and responsibilities with which he was entrusted mandated by Illinois law that he fully disclose all material facts of his conflicts, self-dealing and theft of corporate opportunities to Pearlshire.

WHEREFORE, Pearlshire prays for judgment against Rehan and RRZ, as follows:

a. For judgment in excess of $5,000,000 for damages sustained by Plaintiff as a result of Rehan's usurpation of the Valparaiso and Burr Ridge business opportunities, according to proof;

b. Punitive damages, including but not limited to reasonable attorney's fees Plaintiff incurs pursuing damages for Rehan's fraud and deceit; and

c. The costs incurred herein and such other relief as the court deems just and equitable.

### Count II- Breach of Fiduciary Duty

NOW COMES the Plaintiff, PEARLSHIRE CAPITAL GROUP LLC and complaining of

Defendants in this Count II as follows:

86. Plaintiff hereby incorporates all allegations of Paragraphs 1 through 78 above as though fully set forth herein as paragraph 85.

87. Rehan, as an employee and agent of Pearlshire entrusted with managing Pearlshire's business affairs, owed a fiduciary duty of utmost loyalty and honesty to Pearlshire and to act only in Pearlshire's best interest and not for his individual benefit or that of third parties he formed, owned, managed or controlled.

88. Despite Rehan's fiduciary duties, at multiple times between 2014 and the end of his employment in 2016, he used Pearlshire's Proprietary Information to benefit himself at the expense of Pearlshire and hid the Valparaiso and Burr Ridge hotel opportunities from Pearlshire.

89. Rehan breached the aforementioned fiduciary duties in the following manners:

a. Failing to disclose his interest in competing companies;

b. Concealing the Valparaiso Opportunity from Pearlshire then usurping that opportunity for his own benefit;

c. Concealing the Burr Ridge Opportunity and usurping that opportunity for his own benefit;

d. Signing letters of intent, development agreements, vendor contracts and franchise applications in Pearlshire's name for hotel opportunities Rehan decided to steal for himself.

90. As a direct result of the aforementioned breaches, Pearlshire has suffered monetary damages in excess of $5,000,000.00 as a result of Rehan usurping the Valparaiso and Burr Ridge business opportunities.

WHEREFORE, Pearlshire prays for judgment against all Rehan as follows:

a. For judgment in excess of $5,000,000 for damages sustained by Plaintiff as a result of Rehan's usurpation of the Valparaiso and Burr Ridge business opportunities, according to proof;

b. Disgorgement of all amounts paid to or for benefit of Rehan in wages, salary, benefits, distributions, expenses or otherwise; additional compensatory damages in an amount to be proven at trial, including prejudgment interest at the rate of 5% per annum, as provided by 815 ILCS 205/2;

c. Punitive damages, including but not limited to reasonable attorney's fees Plaintiff incurs pursuing damages for Rehan's willful breach of fiduciary duties; and

d. The costs incurred herein and such other relief as the court deems just and equitable.

## COUNT III – UNJUST ENRICHMENT

NOW COMES the Plaintiff, PEARLSHIRE CAPITAL GROUP LLC and complaining of Defendant in this Count III as follows:

91. Plaintiff hereby incorporates all allegations of Paragraphs 1 through 78 above as though fully set forth herein as paragraph 99.

92. As a direct result of his dishonest and fraudulent acts Rehan, directly or indirectly, has received and will continue to receive millions of dollars of benefits that should have gone to the Pearlshire from the Valparaiso and Burr Ridge Developments.

93. Rehan procured those benefits from third parties through wrongful conduct.

94. Pearlshire was entitled to each of the benefits Rehan absconded with by usurping the Valparaiso and Burr Ridge hotel opportunities.

95. Equity and conscience require that all benefits Rehan received and will receive as a result of Rehan's wrongful conduct rightfully belong to Pearlshire.

WHEREFORE, Pearlshire Capital Group LLC prays for entry of judgment in its favor and against Defendant Rana Rehan Zaid in an amount equal to all benefits Defendant has received and may in the future receive as a result of Rehan's wrongful conduct, according to proof.

Respectfully submitted by

PEARLSHIRE CAPITAL GROUP LLC

/s/ Patrick D. Lamb
One of its attorneys

Patrick D. Lamb
John F. Sullivan
Matthew L. Hendrickson
PLUNKETT COONEY, PC
221 North LaSalle Street, Suite 1550
Chicago, Illinois 60601
(312) 670-6900
plamb@plunkettcooney.com
mhendricksen@plunkettcooney.com